UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

MAJOR BRANDS, INC.,                     )
                                        )
        Plaintiff,                      )
                                        )
v.                                      )        Case No. 4:18CV423 HEA
                                        )
MAST-JÄGERMEISTER US, INC.,             )
MAST-JÄGERMEISTER US HOLDING,           )
INC., SOUTHERN GLAZER'S WINE            )
AND SPIRITS OF MISSOURI, LLC,           )
SUPERIOR WINES AND LIQUORS, INC.,)
and SOUTHERN GLAZER'S WINE AND          )
SPIRITS, LLC                            )
                                        )
        Defendants.                     )

## OPINION, MEMORANDUM AND ORDER

This matter is before the Court on Defendant Mast-Jägermeister US, Inc.'s

Motion to Dismiss, [Doc. No. 12], Defendant Mast-Jägermeister US Holding,

Inc.'s Motion to Dismiss, [Doc. No. 16], and Defendants Southern Glazer's Wine

and Spirits of Missouri, LLC, Southern Glazer's Wine and Spirits, LLC and

Superior Wine and Liquors, Inc.'s Motion to Dismiss, [Doc. No. 18].  Plaintiff

opposes the Motion.  For the reasons set forth below, Defendant Mast-Jägermeister

US, Inc.'s Motions will be granted in part and denied in part; Defendant Mast-

Jägermeister US Holding, Inc.'s Motion to Dismiss will be granted; and

Defendants Southern Glazer's Wine and Spirits of Missouri, LLC, Southern

Glazer's Wine and Spirits, LLC and Superior Wine and Liquors, Inc.'s Motion to Dismiss will be granted.

## Facts and Background

Plaintiff alleges the following facts.[1]

Major Brands is a wholesaler licensed in the State of Missouri, under the provisions of Chapter 311 Mo.Rev.Stat., to sell intoxicating liquor to retailers licensed in the State of Missouri.

Southern Missouri and Superior are wholesalers licensed in the State of Missouri under the provisions of Chapter 311 Mo.Rev.Stat., to sell intoxicating liquor to retailers licensed in the State of Missouri, and both compete with Major Brands.

Jägermeister is a manufacturer whose brands of intoxicating liquor are distributed through duly-licensed wholesalers in the State of Missouri.

Major Brands has had a longstanding agreement (the "Distribution Agreement") with Jägermeister for decades whereby it was granted the rights to offer, sell, and distribute within the State of Missouri certain brands of spirits (the "Brands") and Major Brands has for decades offered, sold and distributed those

---

[1] The recitation of facts is set forth for the purposes of the pending motions only.  It in no way relieves the parties of the necessary proof of the facts in later proceedings.

Brands of spirits within the State of Missouri creating demand and value for those Brands in this State.

Pursuant to the Distribution Agreement, Major Brands has made substantial investments in the marketing and distribution of the Brands, and has built up and developed goodwill over the decades for those products throughout the State of Missouri. Major Brands' investments include, without limitation, significant expenditures of time, money, and human resources.

Plaintiff further alleges that under Missouri's Franchise law [Mo. Rev. Stat. § 407.400, *et. seq.*] and as part of the Distribution Agreement, Jägermeister may only terminate the Distribution Agreement and Major Brands' rights to distribute the Brands after first establishing "good cause" for the termination, as that term is defined in Section 407.413.5 of the Revised Statutes of Missouri.

On February 13, 2018, Jägermeister told Major Brands that it was purporting to terminate the Distribution Agreement. Jägermeister did not provide any reasonable grounds for the purported termination that would constitute "good cause" under Section 407.413.5 of the Revised Statutes of Missouri. Jägermeister admitted that the purported termination had "nothing to do with Major Brands' performance," but was the result of Jägermeister's desire to consolidate nationally with Southern.

Southern (including SGWS, Southern Missouri, and Superior) is aware of

Missouri's Franchise law and is willfully and purposefully inducing Jägermeister to violate Missouri law.

Jägermeister's attempt to terminate Major Brands as a wholesaler, after Major Brands has built up the sales and Jägermeister brand over decades, without establishing good cause violates Missouri's Franchise law [Mo. Rev. Stat. § 407.400, *et. seq.*], and, therefore, any purported termination is null and void.

Plaintiff initially filed a lawsuit against Defendants Mast-Jägermeister US, Inc., Mast-Jägermeister US Holding, Inc. (together, "Mast-Jägermeister") and Southern Glazer's Wine & Spirits of Missouri, LLC ("Southern Glazer's of Missouri") in the Twenty-Second Judicial Circuit of St. Louis City, Missouri on February 13, 2018 (the "first action"). Major Brands alleged that it had a franchise with Mast-Jägermeister, and that Mast-Jägermeister unlawfully terminated this relationship. Major Brands also alleged that Southern Glazer's of Missouri tortiously interfered with the alleged franchise relationship, and that these defendants engaged in a civil conspiracy.

Defendants in the first action removed it shortly after it was filed on the grounds that complete diversity existed between the parties. *Major Brands Inc. v. Mast-Jägermeister US, Inc.*, No. 4:18-cv-00254-HEA. Plaintiff dismissed the first action and filed another lawsuit in the Twenty-Second Judicial Circuit of St. Louis City, Missouri. Major Brands added of two defendants, Southern Glazer's Wine

and Spirits, LLC ("Southern Glazer's") and Superior Wines and Liquors, Inc. ("Superior"), a Missouri corporation. No other changes were made to the Petition in the second suit. Major Brands did not add any specific allegations regarding Southern Glazer's or Superior, instead grouping the two new defendants in with the allegations originally made against the defendants in the first action.

Defendants timely removed the second lawsuit to this Court on the basis that Superior was fraudulently joined for the sole purpose of avoiding this Court's jurisdiction. Major Brands moved to remand, arguing that this Court did not have diversity jurisdiction due to the Missouri citizenship of Superior. Major Brands also argued that the Court should ignore the form of Southern Glazer's of Missouri, a limited liability company comprised of Texas and Florida members, and the diverse residency of its members, and instead treat Southern Glazer's of Missouri as a Missouri corporation for purposes of diversity jurisdiction.

The Court denied Plaintiff's Motion to Remand, Superior was dismissed and the Court denied Plaintiff's invitation to deviate from established law regarding the citizenship of limited liability corporations.

Count I of the Petition is brought for a declaratory judgment; Count II for a violation of Mo.Rev.Stat. § 407.413; Count III is an alleged breach of contract claim; Count IV is a breach of the covenant of good faith and fair dealing; Count V is brought for recoupment ; Count VI is an unjust enrichment claim; Counts VII

and VIII are alleged tortious interference claims; and Count IX is a claim for civil conspiracy. Defendants move to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## Legal Standard

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). To satisfy this requirement, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Corrado v. Life Inv'rs Ins. Co. of Am.*, 804 F.3d 915, 917 (8th Cir. 2015) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Barton v. Taber*, 820 F.3d 958, 964 (8th Cir. 2016) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Zink v. Lombardi*, 783 F.3d 1089, 1098 (8th Cir. 2015) (quoting *Iqbal*, 556 U.S. at 678), *cert. denied*, 135 S. Ct. 2941 (2015). The complaint's factual allegations must be "sufficient to 'raise a right to relief above the speculative level.'" *McDonough v. Anoka Cty.*, 799 F.3d 931, 946 (8th Cir. 2015) (quoting *Twombly*, 550 U.S. at 555). The Court must accept factual allegations as true, but it is not required to accept any "legal conclusion couched as a factual allegation." *Brown v.*

*Green Tree Servicing LLC*, 820 F.3d 371, 373 (8th Cir. 2016) (quoting *Iqbal*, 556 U.S. at 678). Thus, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ash v. Anderson Merchandisers, LLC*, 799 F.3d 957, 960 (8th Cir. 2015) (quoting *Iqbal*, 556 U.S. at 678), *cert. denied*, 136 S. Ct. 804 (2016).

On a motion to dismiss, courts must rule "on the assumption that all the allegations in the complaint are true," and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" *Twombly*, 550 U.S. at 555, 556 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)). "Determining whether a complaint states a plausible claim for relief ... [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Mickelson v. Cty. of Ramsey*, 823 F.3d 918, 923 (8th Cir. 2016) (alteration in original) (quoting *Iqbal*, 556 U.S. at 679).

## Discussion

### Defendant Mast-Jägermeister US, Inc.

### Counts I and II

In Count I of its Petition, Plaintiff seeks a declaration that Jägermeister has no right to terminate Plaintiff as a wholesaler pursuant to the Missouri Franchise law, Mo.Rev.Stat. § 407.413, *et seq.* because it has not established good cause for

such termination.  In Count II, Plaintiff claims a violation of the Missouri Merchandising Practices Act based on Jägermeister's termination of the Distributor Agreement without good cause.

Defendant Mast-Jägermeister US, Inc. ("Jägermeister") argues that Counts I and II must be dismissed since Plaintiff's lawsuit is dependent upon the existence of a "franchise" between it and Jägermeister, and no such franchise relationship exists.  Plaintiff contends that the "general" definition of franchise in the Franchise Act does not apply to it since it is a liquor wholesaler, and even if it does, the Petition states a cause of action under both franchise definitions.

The Missouri Merchandising Act defines "franchise:"

> "Franchise" means a written or oral arrangement for a definite or indefinite period, in which a person grants to another person a license to use a trade name, trademark, service mark, or related characteristic, and in which there is a community of interest in the marketing of goods or services at wholesale, retail, by lease, agreement, or otherwise, including but not limited to a commercial relationship of definite duration or continuing indefinite duration, between a "wholesaler," such wholesaler being a person as defined in this section, licensed pursuant to the provisions of chapter 311, to sell at wholesale, intoxicating liquor, as defined in section 311.020, to retailers, duly licensed in this state, and a "supplier," being a person engaged in the business as a manufacturer, distiller, rectifier or out-of-state solicitor whose brands of intoxicating liquor are distributed through duly licensed wholesalers in this state, and wherein a wholesaler is granted the right to offer, sell, and distribute within this state or any designated area thereof such of the supplier's brands of intoxicating liquor, or all of them, as may be specified; except that, the term "franchise" shall not apply to persons engaged in sales from warehouses or like places of storage, other than wholesalers as above described....

Mo.Rev.Stat. § 407.400(1).

The Missouri Supreme Court has addressed the issue of whether the general definition of franchise applies to liquor distributors in the affirmative. "The statute first contains a general definition of 'franchise' applicable generally to all types of businesses; it then contains a specific definition of liquor distribution agreements that are included." *High Life Sales, Co. v. Brown- Foreman Corp*., 823 S.W.2d 493, 500-501 (Mo banc. 1992). The Eighth Circuit Court of Appeals has since applied this interpretation of Missouri law.

The threshold issue is whether the business relationship between [the parties] constituted a franchisor-franchisee relationship under Missouri law. Mo.Rev.Stat. § 407.400(1) contains the definition of "franchise." A 1975 amendment added an express inclusion of liquor wholesalers and suppliers into the definition. The relevant excerpt of the definition is as follows, with the amended language in boldface:

"Franchise" means a written or oral arrangement for a definite or indefinite period, in which a person grants to another person a license to use a trade name, trademark, service mark, or related characteristic, and in which there is a community of interest in the marketing of goods or services at wholesale, retail, by lease, agreement, or otherwise, **including but not limited to a commercial relationship of definite duration or continuing indefinite duration, between a "wholesaler," such wholesaler being a person as defined in this section, licensed pursuant to the provisions of chapter 311, to sell at wholesale, intoxicating liquor, as defined in section 311.020, to retailers, duly licensed in this state, and a "supplier," being a person engaged in the business as a manufacturer, distiller, rectifier or out-of-state solicitor whose brands of intoxicating liquor are distributed through duly licensed wholesalers in this state, and wherein a wholesaler is granted the right to offer, sell, and distribute within this state or any designated area thereof such of the supplier's brands of intoxicating liquor, or all of them, as may be specified;** except that, the term "franchise" shall not apply to persons engaged in sales from

warehouses or like places of storage, **other than wholesalers as above described**...

Mo.Rev.Stat. § 407.400(1); *see also* Mo. H.B. 810 (1975) (enacted); *Brown–Forman Distillers Corp. v. McHenry,* 566 S.W.2d 194, 198–99 (Mo. banc 1978).

## A. Whether the general definition of "franchise" under § 407.400(1) applies to liquor supplier-wholesaler business relationships

The parties dispute whether only the criteria outlined in the statutory text specifically referring to liquor wholesalers (the specific definition) need be satisfied to demonstrate the existence of a franchise in the liquor distribution industry, or whether the criteria from the language in the original franchise legislation (the general definition)—which was unchanged by the 1975 amendment—also apply. Under the general definition, which [defendant] argues applies, the existence of a franchise requires proof of the following elements: (1) a written or oral arrangement, (2) in which a person grants to another person a license to use a trademark or related characteristic, and (3) in which there is a community of interest in the marketing of goods or services. Mo.Rev.Stat. § 407.400(1). Under the specific definition, one would need to prove only (1) the existence of a commercial relationship of definite duration or continuing indefinite duration between a wholesaler and supplier to sell intoxicating liquor (2) wherein a wholesaler is granted the right to offer, sell, and distribute any of the supplier's brands. *Id.*

Under Missouri law, "[t]he seminal rule of statutory construction is to ascertain the intent of the legislature from the language used and to consider the words used in their plain and ordinary meaning." *St. Louis Cnty. v. Prestige Travel, Inc.,* 344 S.W.3d 708, 713–14 (Mo. banc 2011) (citing *Turner v. Sch. Dist. of Clayton,* 318 S.W.3d 660, 665 (Mo. banc 2010)). When a statute's language is clear, Missouri courts give effect to its plain meaning and "refrain from applying the rules of construction unless there is some ambiguity." *Id.* (quotation omitted). "Where statutory interpretation is necessary, statutory language is considered in context and in comparison with other sections to determine its meaning." *Id.* (citation omitted).

The district court correctly concluded that a plain reading of § 407.400(1) makes clear that the general definition indeed applies to franchise relationships within the liquor industry the same as it applies to all other businesses. This is apparent from the statute's use of the word "including" after the general definition of "franchise," as opposed to "or," "except," or some other language denoting that liquor sales relationships were to be analyzed differently from relationships in other industries. This interpretation is supported by the Missouri Supreme Court's explanation that § 407.400(1) "contains both an original, general definition of 'franchise,' applying to *all types of businesses* and not limited to liquor franchises, as well as a specific definition added by the legislature in [1975] to specifically include liquor franchises," and "[t]he statute first contains a general definition of 'franchise' applicable generally to *all types of businesses;* it then contains a specific definition of liquor distribution agreements that are included." *High Life Sales Co. v. Brown–Forman Corp.,* 823 S.W.2d 493, 500–01 (Mo. banc 1992) (emphasis added). Thus, the specific definition simply illustrates a type of relationship that could be covered under the statute, provided that such relationship also satisfied the general definition of "franchise."

[Plaintiff] counters that *High Life Sales* actually supports its position, because the case included an analysis only of the specific definition in determining whether the relationship at issue constituted a franchise. When read in its entirety, however, the case suggests that the Missouri Supreme Court confined its analysis to the language of the 1975 amendment because the disputed issue concerned whether a liquor wholesaler's business satisfied the specific definition. *See High Life Sales,* 823 S.W.2d at 500–02.

*Missouri Beverage Co. v. Shelton Bros.*, 669 F.3d 873, 876 (8th

Cir.2012)(emphasis in original).

The Petition in this case fails to sufficiently set forth the necessary facts to

state a franchise agreement between Plaintiff and Jägermeister.  Plaintiff merely

states that it meets the general franchise test, however, the only alleged facts are

that Plaintiff has had a longstanding agreement with Jägermeister whereby it was granted "the rights" to offer, sell, and distribute within Missouri certain brands of spirits, and that it has made substantial investments in the marketing and distribution of those brands. There are no facts setting out any trademark licenses from Jägermeister or any allegations regarding a "community of interest" with Jägermeister. The allegations are insufficient to state a claim under the Franchise Act. Counts I and II will be dismissed.

## Counts III and IV

Count III, which attempts to state a claim for breach of contract, and Count IV, breach of the Covenant of Good Faith and Fair Dealing, are based on the distribution agreement between Plaintiff and Jägermeister. To state a claim for breach of contract, Plaintiff must plead 1.) the "existence of a valid contract"; 2.) the "rights and obligations of each party"; 3.) breach; and 4.) damages. *Best Buy Builders, Inc. v. Siegel*, 409 S.W.3d 562, 564 (Mo. App. 2013).

Defendant argues that Plaintiff has failed to state a claim for breach of contract because the alleged oral contract, establishing a distribution agreement, is unenforceable under the statute of frauds, which generally requires a writing to enforce an agreement for the sale of goods exceeding $500. *See* Mo. Rev. Stat. § 400.2-201. Defendant asserts that the distribution agreement is a contract for the sale of goods.

The test for determining whether a contract is for the sale of goods, "is whether 'the predominant purpose or character' of the agreement is the sale of goods or something else." *United Indus. Syndicate, Inc. v. W. Auto Supply Co.*, 686 F.2d 1312, 1314 (8th Cir. 1982). Even where the sale of goods is a substantial part of the transaction, "the dominant purpose of a particular agreement may be independent of such sales and, hence, be outside the UCC statute of frauds." *Id.* at 1315. Moreover, under Missouri law, "distributorship agreements are not covered by Article 2 [Statute of Frauds]." *Vigano v. Wylain, Inc.*, 633 F.2d 522, 525 (8th Cir. 1980) (citing *Tile-Craft Prods. Co. v. Exxon Corp.*, 581 S.W.2d 886, 889 (Mo. Ct. App. 1979) ); *Adventure Mktg. Grp., Inc. v. Premier Specialty Brands, LLC*, No. 13-3022-CV-S-DW, 2013 WL 12355438, at *3 (W.D. Mo. June 6, 2013) ("Under Missouri law, distributorship agreements are not covered by UCC Article 2.") (analyzing Mo. Rev. Stat. § 400.2-201).

The agreement, presumably an oral agreement, pled by Plaintiff is not a contract for the sale of goods. Plaintiff has not alleged an oral contract obligating either party to purchase or sell a particular quantity of goods, at a set price, or with a specified delivery date. As pled, the dominant purpose of the alleged distribution agreement is independent of the purchase or sale of Jägermeister's products, and thus outside the statute of frauds.

Next, Defendant argues that Plaintiff has failed to state a claim for breach of contract because the alleged oral contract is for an indefinite period of time and thus terminable at will. Under Missouri law, "[a] contract for an indefinite period of time may be terminated at the will of either party." *Sharp v. W. & W. Trucking Co.*, 421 S.W.2d 213, 218 (Mo. 1967); *Lockewill, Inc. v. U.S. Shoe Corp.*, 547 F.2d 1024, 1028–29 (8th Cir. 1976) ("The law of Missouri ... appears to be that where the parties to a ... distributorship agreement which is silent as to duration and which does not deal specifically with termination and they begin to perform thereunder, the agreement is construed to be terminable at the will of either party."). However, an agreement for a period of time that is "definitely ascertainable by any fixed criterion," such as one that ends "upon the completion of a given undertaking, or upon the happening of some event," creates a definite duration. *Superior Concrete Accessories v. Kemper*, 284 S.W.2d 482, 490 (Mo. 1955). *Contra Ditto, Inc. v. Davids*, 457 S.W.3d 1, 9 (Mo. Ct. App. 2014) (stating an "agreement which fixes no specific termination date [either expressly or by necessary implication] is a contract ... for an indefinite period"). An implied termination date must be "susceptible of calculation" to establish a definite duration. *Ditto, Inc.*, 457 S.W.3d at 10.

Plaintiff argues that it has alleged under the Distribution Agreement, termination can only occur for good cause. The Petition fails to clearly delineate that it is the Distribution Agreement that so provides. Paragraph 16 states

> [u]nder Missouri's Franchise law [Mo.Rev.Stat. § 407.400 *et seq.*] and as part of the Distribution Agreement, Jägermeister may only terminate the Distribution Agreement and Major Brands' rights to distribute the Brands after first establishing "good cause" for the termination, as that term is defined in Section 407.413.5 of the Revised Statutes of Missouri.

Paragraph 17, however, alleges that Defendant told Plaintiff it was purporting to terminate the Agreement without providing "good cause under Section 407.413.5 of the Revised Statutes of Missouri." As such, it cannot be ascertained from these two paragraphs alone whether Plaintiff is alleging that because it is a franchise, there must be "good cause" under the Franchise Act or whether the Distribution Agreement itself has a "good cause" requirement as one of its terms. This Count does not, therefore set forth sufficient facts to state an independent claim for breach of contract outside the Franchise Act.

"Under Missouri law, a duty of good faith and fair dealing is implied in every contract." *Arbors at Sugar Creek Homeowners Ass'n v. Jefferson Bank & Trust Co.*, 464 S.W.3d 177, 185 (Mo. 2015). A breach occurs when the defendant frustrates the contract by acting in bad faith, for example, by "eva[ding] the spirit of the bargain, lack of diligence and slacking off, willful rendering of imperfect performance, abuse of a power to specify terms, and interference with or failure to

cooperate." *Compass Bank v. Eager Rd. Associates, LLC*, 922 F. Supp. 2d 818, 826 (E.D. Mo. 2013) (quoting Restatement (Second) of Contracts § 205 cmt. d).

Defendant argues that Plaintiff fails to state a claim for breach of the implied covenant of good faith and fair dealing because the oral contract was terminable at will. As discussed *supra*, it cannot be ascertained from the pleadings whether Plaintiff is alleging that the Distribution Agreement itself contains the "good cause" requirement, or that the requirement is necessarily a part of the Distribution Agreement because of the Franchise Act. Defendant therefore has insufficient allegations upon which to formulate an answer to this claim. Count IV will be dismissed.

**Counts V and VI**

Defendant moves to dismiss Counts V and VI (recoupment and unjust enrichment, respectively) arguing that these counts merely recite the elements of the claims without sufficient allegations of fact to state a plausible claim.

Under Missouri law, the termination of an at-will agreement may give rise to a recoupment claim. Specifically, a party may seek "recoupment or [ ] compensation on a quantum meruit basis where the [party], induced by his appointment, has in good faith incurred expense and devoted time and labor in the matter of the [relationship] without having had a sufficient opportunity to recoup such expenditures from the undertaking." *Ernst v. Ford Motor Co.*, 813 S.W.2d

910, 919 (Mo. Ct. App. 1991). A party seeking damages for time and labor must "prov[e] the reasonable value of services performed." *Kinetic Energy Develop. Corp. v. Trigen Energy Corp.*, 22 S.W.3d 691, 697 (Mo. Ct. App. 1999); *see also Sofa Gallery, Inc. v. Stratford Co.*, 872 F.2d 259, 263 (8th Cir. 1989) (recognizing that the plaintiff "bear[s] the burden of proving the extent to which its investments have gone unrecouped").

Plaintiff has alleged it has expended substantial money, time and labor in marketing and distributing Jägermeister brands in Missouri. Although not specifically detailed, Plaintiff has sufficiently put Defendant on notice of the claim and the types of damages it claims to have incurred. Plaintiff alleges Jägermeister benefited from the expenditures and that it would be inequitable for Jägermeister to retain the benefit of Plaintiff's services without compensation. Under the Rule 12(b)(6) standard, Plaintiff has sufficiently stated a recoupment claim.

The elements for unjust enrichment are: (1) a benefit conferred by one party on another; (2) appreciation or recognition by the receiving part of the fact that what was conferred was a benefit; and (3) acceptance and retention of the benefit that would render that retention inequitable. *Hoeper v. Liley*, 527 S.W.3d 151, 161 (Mo. App. W.D. 2017); *Rental Co, LLC. v. Carter Group, Inc.*, 399 S.W.3d 63, 66 (Mo. App. W.D. 2013); *Cridlebaugh v. Putnam Cty. State Bank of Milan*, 192 S.W.3d 540, 543 (Mo. App. W.D. 2006).[2] Champion's

Defendant asserts that Plaintiff's unjust enrichment claim fails because it is only supported by conclusory allegations. However, Plaintiff has alleged that it expended substantial money, time and labor in marketing and distributing Defendant's brands in Missouri; Plaintiff alleges that a benefit has been conferred on Defendants, that being the demand and value for Defendant's brands that Plaintiff created in Missouri; and that it would be inequitable for Defendant to retain the benefit of Plaintiff's services without sufficient compensation.

Defendants argue that Plaintiff's unjust enrichment argument fails because of the breach of contract action. However, the similarity of the allegations is of no consequence at the pleading stage; Plaintiff may plead both breach of contract and unjust enrichment in the alternative. *See* Fed. R. Civ. P. 8(d)(2). The fact that Plaintiff cannot simultaneously recover damages for both breach of contract and unjust enrichment does not preclude it from pleading both theories in its Petition. *See Owen v. Gen. Motors Corp.*, 06-4067-CV-C-NKL, 2006 WL 2808632, at \*2 (W.D. Mo. Sept. 28, 2006); *see also In re: Dollar Gen. Corp. Motor Oil Mktg. & Sales Practices Litig.*, 16-02709-MD-W-GAF, 2017 WL 3863866, at \*9 (W.D. Mo. Aug. 3, 2017) ("the Court does not dismiss any unjust enrichment claims for preclusion by express contract."). A party may plead the alternate theories of breach of contract and unjust enrichment, however, "any recovery is limited to the

contract's terms." *Kelly & Co. 1st Responders, LLC v. Storm Servs., LLC*, 2009 WL 4908264, at * 4 (W.D. Mo. Dec. 14, 2009).

Defendant's argument goes to the substantive issues with respect to Plaintiff's claims. At this stage of the proceedings, the only issues are whether Plaintiff has stated a cause of action. Whether Plaintiff will ultimately be able to prove its allegations is not now before the Court. Since a motion to dismiss is under consideration the sole inquiry is whether Plaintiff has sufficiently alleged enough facts to put Defendant on notice of its claims.

**Count VII**

Count VII alleges that Defendant tortiously interfered with Plaintiff's business expectancy in the distribution of Defendant's brands to numerous retailers.

> The elements of a cause of action for tortious interference with a business expectancy or relationship are: (1) a contract or valid business relationship or expectancy; (2) the defendant's knowledge of the relationship or contract; (3) intentional interference by the defendant causing or inducing a breach of the contract or relationship; (4) the absence of justification; and (5) damages resulting from the conduct of the defendant.
> *Hertz Corp. v. RAKS Hosp., Inc.*, 196 S.W.3d 536, 549 (Mo. App. 2006).

*Lewellen v. Universal Underwriters Ins. Co.*, No. 2019 WL 579635, at *13 (Mo. Ct. App. Feb. 13, 2019).

> A claim for tortious interference with a contract or business expectancy requires proof of the following elements: "(1) a contract or a valid business expectancy; (2) defendant's knowledge of the contract or

relationship; (3) a breach induced or caused by defendant's intentional interference; (4) absence of justification; and (5) damages." *Nazeri v. Mo. Valley Coll.*, 860 S.W.2d 303, 316 (Mo. 1993).

*    *    *    *

Under Missouri law, a plaintiff has the burden of establishing lack of justification. *Id.* at 316-17. "If the defendant has a legitimate interest, economic or otherwise, in the contract or expectancy sought to be protected, then the plaintiff must show that the defendant employed improper means in seeking to further only his own interests." *Id.* at 317. The Missouri Supreme Court has defined "improper means" as "those that are independently 1055 wrongful, such as threats, violence, trespass, defamation, misrepresentation of fact, restraint of trade, or any other wrongful act recognized by statute or the common law." Id. The defendant has not used improper means it "had an unqualified legal right to do the act complained of." Id.

*Captiva Lake Investments, LLC v. Fid. Nat'l Title Ins. Co.*, 883 F.3d 1038, 1054–55

(8th Cir. 2018*), reh'g denied* (May 29, 2018).

Under Missouri law, a plaintiff need not have an existing contract with a third party to maintain a claim for tortious interference. *Stehno v. Sprint Spectrum, L.P.,* 186 S.W.3d 247, 251 (Mo.2006). It is sufficient that a plaintiff have "a probable future business relationship that gives rise to a reasonable expectancy of financial benefit." *Id.* However, "when a contract alone creates a business expectancy, [a] plaintiff cannot bring a claim for interference with a business expectancy against a party to that contract." *BMK Corp. v. Clayton Corp.,* 226 S.W.3d 179, 191 (Mo.Ct.App.2007); *see also Kelly v. State Farm Mut. Auto. Ins. Co.,* 218 S.W.3d 517, 525 (Mo.Ct.App.2007); *Jurisprudence Wireless Commc'ns, Inc. v. CyberTel Corp.,* 26 S.W.3d 300, 302 (Mo.Ct.App.2000). This rule does not mean that "a party may not have a valid business expectancy in a preexisting and independent business relationship just because the preexisting relationship relies upon a third-party supply contract to furnish the subject of their agreement." *BMK,* 226 S.W.3d at 191. The critical issue in this case, then, is whether [Plaintiff] had independent business relationships with its dealers predating its agreement with [Defendant.] The complaint demonstrates that [Plaintiff] had no such relationships.

*Cole v. Homier Distrib. Co.*, 599 F.3d 856, 861–62 (8th Cir. 2010).

Plaintiff's Petition is silent as to the valid business expectancy in the distribution of Defendant's brand. It simply states one existed. Thus, it is impossible to ascertain whether Plaintiff is relying solely on the Distribution Agreement as the basis of the business expectancy, in which case, Plaintiff cannot state a claim, or whether Plaintiff had some other business relationship with the retailers such that a valid business expectancy exists. Count VIII therefore fails to state a cause of action and is dismissed.

## Counts IX

Defendant argues that Count IX must be dismissed because the basis for the alleged civil conspiracy is the alleged tortious interference of Defendant in Plaintiff's business expectancy with the retailers. Since Plaintiff's tortious interference claim fails to state a cause of action, the civil conspiracy claim must be dismissed. Plaintiff counters that in addition to the tortious interference of Defendant in its business expectancy, Plaintiff has alleged that Defendant intentionally violated Plaintiff's protected Missouri franchise rights.

Count IX must be dismissed since, as discussed *supra*, Plaintiff has not set out sufficient claims for either a violation of the Missouri Franchise Act or tortious interference with its business expectancy.

Plaintiff seeks to amend its Petition. Defendant argues that the Court should not grant leave because Plaintiff has failed to seek leave in a separate pleading. In the interests of justice and efficiency, the Court will grant leave to file an amended pleading, with the admonition that Plaintiff should, in future instances, seek separate leave to file amended pleadings.

**Defendant Mast-Jägermeister US Holding, Inc.**

Defendant Mast-Jägermeister US Holding, Inc. ("Holding") moves to dismiss for lack of personal jurisdiction over it. Personal jurisdiction concerns "whether the controversy or the defendant has sufficient contracts, ties, or relationships with the forum to give the court the right to exercise judicial power over the defendant ...." 5B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1351 (3d ed. 2004). Personal jurisdiction can be specific or general. *Viasystems, Inc. v. EBM-Pabst St. Georgen GmbH & Co., KG*, 646 F.3d 589, 593 (8th Cir. 2011).

In a diversity case such as this one, personal jurisdiction exists only to the extent permitted by the forum state's "long-arm statute" and the Due Process Clause of the Fourteenth Amendment. *Myers v. Casino Queen, Inc.*, 689 F.3d 904, 909 (8th Cir. 2012); *see* Fed. R. Civ. P. 4(k)(1)(A). Missouri's long-arm statute authorizes personal jurisdiction over defendants who transact business, contract, or commit a tort within the state. *Viasystems*, 646 F.3d at 593; Mo. Rev. Stat. §

506.500. These categories are construed broadly, and the statute provides jurisdiction to the full extent permitted by the Due Process Clause. *Id.*

"[B]ecause the Missouri long-arm statute authorizes the exercise of jurisdiction over non-residents to the extent permissible under the due process clause," a federal court need only consider "whether the assertion of personal jurisdiction would violate" due process. *Aly v. Hanzada for Import & Export Co., LTD*, 864 F.3d 844, 849 (8th Cir. 2017) (quotations and citations omitted).[2]  The court considers whether there is "sufficient minimum contacts between a defendant and the forum state so that jurisdiction over a defendant with such contacts may not offend traditional notions of fair play and substantial justice." *Id.* (quotations and citations omitted).  This decision is made by weighing five factors: "(1) the nature and quality of the contacts with the forum state; (2) the quantity of those contacts; (3) the relationship of those contacts with the cause of action; (4) Missouri's interest in providing a forum for its residents; and (5) the convenience

---

[2] The Court recognizes that an Eighth Circuit decision has cautioned against collapsing these two inquiries into one because the Missouri Supreme Court analyzes these questions separately. *See Viasystems, Inc. v. EBM-Papst St. Georgen GmbH & Co., KG*, 646 F.3d 589, 593 n.2 (8th Cir. 2011) (quoting *Bryant v. Smith Interior Design Grp.*, 310 S.W.3d 227, 231 (Mo. 2010) ). Subsequent Eighth Circuit decisions, however, have considered only whether the assertion of personal jurisdiction violates due process. *See, e.g.*, *Hanzada*, 864 F.3d at 849 (quoting *Eagle Tech. v. Expander Americas, Inc.*, 783 F.3d 1131, 1136 (8th Cir. 2015)).

or inconvenience to the parties," with the court giving "significant weight" to the first three factors. *Id.*

To survive a motion to dismiss for lack of personal jurisdiction, a plaintiff must plead sufficient facts to support a reasonable inference that the defendant is subject to jurisdiction within the state. *Creative Calling Sols., Inc. v. LF Beauty Ltd.*, 799 F.3d 975, 979 (8th Cir. 2015). Once a motion has been filed, the parties may submit evidence, such as affidavits, to bolster their positions. *Id.* The plaintiff bears the burden of proof and must make a prima facie showing that personal jurisdiction exists. *Fastpath, Inc. v. Arbela Tech. Corp.*, 760 F.3d 816, 820 (8th Cir. 2014). At the motion stage, the court may not dismiss for lack of personal jurisdiction if the evidence, viewed in the light most favorable to the plaintiff, is sufficient to support a conclusion that the exercise over the defendant is proper. *Id.*

Plaintiff has failed to place any evidence in the record demonstrating any link between MJ Holding, Inc. and Missouri.

The five-factor test used to analyze personal jurisdiction tilts heavily toward finding that exercising personal jurisdiction over MJ Holdings would violate due process. First, with respect to the nature and quality of its contacts, the record is completely silent as to any contacts it had with Missouri. Although Plaintiff attempts to characterize Mr. Popkin's visit to Missouri as an MJ Holding contact, the uncontested evidence in the record establishes that Mr. Popkin was acting on

behalf of Mast-Jägermeister US, Inc.; there is no evidence to establish that MJ Holdings had anything to do with the visit or the letter terminating the parties' Distribution Agreement. Certainly nothing Mr. Popkin is alleged to have done was sufficient to put MJ Holdings on notice that it should "reasonably anticipate being haled into court" in Missouri. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980); *see Wessels, Arnold & Henderson v. Nat'l Med. Waste, Inc.*, 65 F.3d 1427, 1432 (8th Cir. 1995) (observing unilateral actions of a party claiming a relationship with a nonresident defendant does not create personal jurisdiction). Second, the number of contacts with Missouri is very small; based on this record, zero. Third, the relationship of these contacts to the causes of action against MJ Holdings is nonexistent. And specific jurisdiction is based on the defendant's contacts with the forum state itself, not the defendant's relationship with the plaintiffs.

The last two factors, Missouri's interest in providing a forum for its residents and the relative convenience to the parties, weigh against personal jurisdiction as well. While Missouri has a strong interest in providing a forum for its citizens, there is nothing whatsoever in this record to establish any action of MJ Holdings Missouri from which Missouri citizens need to be provided a forum. Likewise the convenience factor is not met since is no basis upon which to require representatives from MJ Holdings to be brought to Missouri.

Plaintiff contends that MJ Holdings conspired to terminate the Agreement with the other defendants. As the conspiracy count has been dismissed, *see supra,* the Court need not address this basis for asserting jurisdiction over MJ Holding. The Motion to Dismiss will be granted. Based upon the foregoing analysis, the request for jurisdictional discovery is denied.

## Southern Glazer's Wine and Spirits, LLC[3]

Count VIII attempts to state a claim for tortious interference as to Defendant Southern. Since the Court has determined that the Petition fails to state claims for breach of contract, under the Missouri Franchise Act and for an oral Distribution Agreement, and has failed to set forth a valid claim for business expectancy, the claim against Southern Glazer's fails as well.

## Conclusion

Based upon the foregoing Plaintiff's Petition fails to state a cause of action in Counts I, II, III, IV, VII, VIII, and IX.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant Mast-Jägermeister US, Inc.'s Motion to Dismiss, [Doc. No. 12], is **granted in part** and **denied in part**;

---

[3] Defendant Superior Wines and Liquors, Inc. joined in this Motion to Dismiss, however, Superior has previously been dismissed from this action. *See Opinion, Memorandum and Order* dated November 15, 2018.

**IT IS FURTHER ORDERED** that Defendant Mast-Jägermeister US Holding, Inc.'s Motion to Dismiss, [Doc. No. 16], is **granted**;

**IT IS FURTHER** ORDERED that Defendants Southern Glazer's Wine and Spirits of Missouri, LLC and Southern Glazer's Wine and Spirits, LLC and Superior Wine and Liquors, Inc.'s Motion to Dismiss, [Doc. No. 18], is **granted**.

**IT IS FURTHER ORDERED** that Plaintiff is given 10 days from the date of this Opinion, Memorandum and Order to file an amended Complaint.  Plaintiff is admonished to abide by the findings and conclusions articulated herein.

Dated this 12th day of March, 2019.



_____
        HENRY EDWARD AUTREY
     UNITED STATES DISTRICT JUDGE