UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| MAJOR BRANDS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:18CV423 HEA |
| | ) | |
| MAST-JÄGERMEISTER US, INC., | ) | |
| et al. | ) | |
| | ) | |
| Defendants, | ) | |

## OPINION, MEMORANDUM AND ORDER

This matter is before the Court on Defendants' Motion for Judgment as a Matter of Law, or in the Alterative, a New Trial on All Claims and/or Remittitur, [Doc. No. 560].  Plaintiff opposes the Motion.  The matter is fully briefed and ripe for adjudication.

## Background

This matter was tried before a jury beginning on November 15, 2021 and concluding on November 22, 2021.  The jury returned its verdict in favor of Plaintiff and against Defendants on the following:  Missouri Franchise Act violation against Mast-Jägermeister US, Inc.(Jägermeister); tortious interference claims against Southern Glazer's Wine and Spirits of Missouri, LLC and Southern Glazer's Wine and Spirits, LLC, civil conspiracy to violate the Missouri Franchise

Act against Defendants Jägermeister US, Inc. and Southern Glazer's Wine and Spirits of Missouri, LLC,  and civil conspiracy to violate the Missouri Franchise Act against Defendants Jägermeister and Southern Glazer's Wine and Spirits, LLC.  Damages were assessed in the amount of $11,750,000.  The jury also found Defendant Jägermeister was unjustly enriched but neglected to assess an amount by which it was unjustly enriched.

Defendant now moves for judgment as a matter of law or for a new trial and/or remittitur.

## Discussion

## Legal Standard

Pursuant to Federal Rule of Civil Procedure 50, a court should render judgment as a matter of law "'when no reasonable jury could have found for the nonmoving party.'" *Monohon v. BNSF Ry. Co.*, 17 F.4th 773, 780 (8th Cir. 2021) (*quoting S. Wine & Spirits of Nev. v. Mountain Valley Spring Co*., 646 F.3d 526, 533 (8th Cir. 2011)). Judgment as a matter of law is appropriate "'after a party has been fully heard on an issue'" so that the Court can "'enter judgment accordingly if a reasonable jury could not find in that party's favor.'" *Jacobson Warehouse Co., Inc. v. Schnuck Mkts., Inc*., 13 F.4th 659, 674 (8th Cir. 2021) (quoting *Adeli v. Silverstar Auto, Inc*., 960 F.3d 452, 458 (8th Cir. 2020)). This Court must assess

whether the evidence is "'so one-sided that one party must prevail as a matter of law.'" *Adeli*, 960 F.3d at 458 (*quoting White v. Union Pac. R.R. Co.*, 867 F.3d 997, 1000 (8th Cir. 2017)). It bears emphasizing that "'the law places a high standard on overturning a jury verdict because of the danger that the jury's rightful province will be invaded when judgment as a matter of law is misused.'" *Washington v. Denney*, 900 F.3d 549, 558 (8th Cir. 2018) (*quoting Bavlsik v. Gen. Motors, LLC*, 870 F.3d 800, 805 (8th Cir. 2017)). When deciding a motion for judgment as a matter of law, this Court must:

(1) consider the evidence in the light most favorable to the prevailing party,
(2)  assume that all conflicts in the evidence were resolved in favor of the prevailing party,
(3) assume as proved all facts that the prevailing party's evidence tended to prove, and
(4) give the prevailing party the benefit of all favorable inferences that may reasonably be drawn from the facts proved.

*Ryan Data Exchange, Ltd. v. Graco, Inc.*, 913 F.3d 726, 732–33 (8th Cir. 2019).

According to Rule 50 of the Federal Rules of Civil Procedure, judgment as a matter of law should not be granted unless "a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue." Fed. R. Civ. P. 50(a)(1). In applying this standard, the court is to "draw 'all reasonable inferences in favor of the nonmoving party without making credibility assessments or weighing the evidence.'" *First Union Nat. Bank v. Benham*, 423 F.3d 855, 863 (8th Cir. 2005). A reasonable inference is

one that may be drawn from the evidence without resort to speculation. *Id.*

"Judgment as a matter of law is appropriate '[w]hen the record contains no proof

beyond speculation to support [a] verdict.' " *Id.* (quoting *Sip-Top, Inc. v. Ecko*

*Group, Inc.*, 86 F.3d 827, 830 (8th Cir. 1996)).

Federal Rule of Civil Procedure Rule 59(e) motions serve the limited

function of correcting manifest errors of law or fact or to present newly discovered

evidence. *U.S. v. Metro. St. Louis Sewer Dist.*, 440 F.3d 930, 933 (8th Cir. 2006).

Such motions cannot be used to introduce new evidence, tender new legal theories,

or raise arguments which could have been offered or raised prior to entry of

judgment." *Id.* (*quoting Hagerman v. Yukon Energy Corp.*, 839 F.2d 407, 414 (8th

Cir. 1988)).

New trials based on the weight of the evidence are generally disfavored, and

the district court's authority to grant a new trial should be exercised sparingly and

with caution. *United States v. Campos*, 306 F.3d 577, 579 (8th Cir. 2002). The

jury's verdict must be allowed to stand unless the evidence weighs heavily enough

against the verdict that a miscarriage of justice may have occurred. *United States v.*

*Lacey*, 219 F.3d 779, 783 (8th Cir. 2000); *United States v. Anwar*, 428 F.3d 1102,

1109 (8th Cir. 2005) (stating that a district court may weigh the evidence and

evaluate for itself the credibility of the witnesses in determining whether a new

trial is warranted). The denial of a post-trial motion for judgment as a matter of law

to be affirmed unless there was "'a complete absence of probative facts to support the conclusion reached' so that no reasonable juror could have found for the nonmoving party." *Sheriff v. Midwest Health Partners, P.C.*, 619 F.3d 923, 928 (8th Cir. 2010) (quoting *Hathaway v. Runyon*, 132 F.3d 1214, 1220 (8th Cir. 1997)). The evidence must be viewed in the light most favorable to the nonmoving party while assuming as proven all facts the evidence tends to show, resolving all evidentiary conflicts in the nonmoving party's favor, and affording all reasonable inferences to the nonmoving party. *Id.* at 929.

The Court has previously held that in order for a franchise to exist between Plaintiff and Jägermeister, Jägermeister must have granted Plaintiff a license to use its "trade name, trademark, service mark, or related characteristic," and there must be a "community of interest in the marketing of goods or services at wholesale, retail, by lease, agreement, or otherwise..."  Mo.Rev.Stat. § 407.400.

Jägermeister argues the parties' relationship was nothing more than a traditional distribution relationship, claiming Plaintiff failed to establish a community of interest and a trademark license.

**Community of Interest**

The Eighth Circuit Court of Appeals has set out the analysis for a finding of a community of interest.

In the absence of any discussion by the Missouri courts regarding the community of interest requirement, for guidance we consider interpretations

of similar statutes. Looking again to interpretation of the very similar New Jersey franchise law:

> The community of interest signalling [sic] a franchise relationship does not imply a sharing of profits. Rather it is based on the complex of mutual and continuing advantages which induced the franchisor to reach his ultimate consumer through entities other than his own which, although legally separate, are nevertheless economically dependent upon him.

*Neptune [T.V. & Appliance Serv., Inc. v. Litton Microwave Cooking Prods. Div.,* 190 N.J.Super. 153,[ 462 A.2d 595, 599] at 600-01 [(App.Div.1983)] (internal citation omitted). From *Neptune* and its progeny, the Third Circuit distilled the following two-part test for determining whether a community of interest exists: "(1) the distributor's investments must have been substantially franchise-specific, and (2) the distributor must have been required to make these investments by the parties' agreement or the nature of the business." *Cooper Distrib. Co. v. Amana Refrigeration, Inc.,* 63 F.3d 262, 269 (3d Cir.1995) (internal quotation and citation omitted). Courts interpreting the New Jersey statute have in turn sought guidance from the very similar Wisconsin Fair Dealership Law (WFDL), see *Neptune,* 462 A.2d at 599–600, under which a community of interest may exist under one of two circumstances: (1) "when a large proportion of an alleged dealer's revenues are derived from the dealership," or (2) "when the alleged dealer has made sizable investments (in, for example, fixed assets, inventory, advertising, training) specialized in some way to the grantor's goods or services, and hence not fully recoverable upon termination."[6] *Frieburg Farm Equip., Inc. v. Van Dale, Inc.,* 978 F.2d 395, 399 (7th Cir.1992) (citations omitted); see Wis. Stat. § 135.02 (defining "[c]ommunity of interest" as "a continuing financial interest between the grantor and grantee in either the operation of the dealership business or the marketing of such goods or services"). Given the strong similarities between the "franchise" definitions in Missouri, New Jersey, and Wisconsin, we believe that the Missouri Supreme Court would determine the existence of a "community of interest" under a standard commensurate with those articulated by the Third Circuit in Cooper Distributing and the Seventh Circuit in Frieburg.

*Missouri Beverage Co. v. Shelton Bros.,* 669 F.3d 873, 879–80 (8th Cir. 2012).

In its response to the motion, Plaintiff sets out the evidence it produced.  For example, Plaintiff's witness O'Neil testified that  Plaintiff had a huge role in marketing and promoting Jägermeister in Missouri.  Plaintiff made Jägermeister specific investments in the local marketing fund (LMF).  All investment expenses for Jägermeister were made from the LMF.  Plaintiff also made investments in Jägermeister which exceeded its required LMF contribution amount.

In addition, Plaintiff also agreed to an additional $2 per case of Jägermeister it sold to send to Jägermeister headquarters for use in its national advertising.

Plaintiff also hired a brand-specific specialist, Danny Smith, who sold only Jägermeister during the parties' relationship.  Although Smith was retained after the relationship ended, during the parties' relationship, Plaintiff paid Smith's salary to sell only Jägermeister.

As Plaintiff further argues, Jägermeister requested it to purchase a large amount of product and then asked Plaintiff to stop  selling the product in 2017 to allegedly boost sales in 2018.

Defendants argue Plaintiff's evidence was insufficient to establish a community of interest pursuant to *Shelton Bros.* While Defendants disagree with the outcome of the trial and have supported their arguments with testimony which they claim establishes a lack of community of interest, the jury was presented with evidence from which it could assess whether a community of interest existed.

Unlike *Shelton Bros.*, which was decided at the summary judgment stage, in this case, it was the jury's duty to weigh the evidence and determine the community of interest issue. While Plaintiff's sales of Jägermeister may not have amounted to what Jägermeister believes is a large enough proportion of Plaintiff's revenues, a reasonable jury could conclude that Plaintiff made sizable, specialized investments in Jägermeister, which were required by the nature of the parties' relationship. *See Cooper Distrtib.* 63 F.3d at 269; *Neptune*, 462 A.2d at 599-600. Considering all evidence, a reasonable jury could find a community of interest between Plaintiff and Jägermeister.

**Trademark License**

Jägermeister argues Plaintiff has failed to produce sufficient evidence to establish Jägermeister granted Plaintiff a trademark license.

> "[A] hallmark of the franchise relationship is the use of another's trade name in such a manner as to create a reasonable belief on the part of the consuming public that there is a connection between the trade name licensor and licensee by which the licensor vouches, as it were, for the activity of the licensee in respect of the subject of the trade name." *Neptune T.V. & Appliance Serv., Inc. v. Litton Microwave Cooking Prods. Div.,* 190 N.J.Super. 153, 462 A.2d 595, 599 (App.Div.1983) (citations omitted). "[N]ot every grant of permission to use a trademark in the sale of goods or services is a 'license' within the meaning of the Franchise Act ... The license contemplated by the Act is one in which the franchisee wraps himself with the trade name of the franchisor and relies on the franchisor's goodwill to induce the public to buy." *Liberty Sales Assocs., Inc. v. Dow Corning Corp.,* 816 F.Supp. 1004, 1009–10 (D.N.J.1993) (quoting and citing *Instructional Sys., Inc. v. Computer Curriculum Corp.,* 130 N.J. 324, 614 A.2d 124, 138–40 (1992)).

*Shelton Bros.*, 669 F.3d at 879. Unlike the relationship in *Shelton*, wherein MoBev never used Shelton's name in any marketing efforts, never requested to use Shelton's name, and never received Shelton's express permission to call itself an authorized Shelton dealer, there was evidence at trial that Plaintiff had access to Jägermeister's trademarks, logos, and images. Plaintiff was allowed access to Jägermeister's password protected website. Plaintiff would use the restricted database to create custom promotional materials.

Defendant argues that Plaintiff presented no evidence of what the consuming public believed. Further, Defendant point to Sue McCollum's testimony that Plaintiff worked to build its own independent reputation and that Plaintiff's trucks, business cards, and promotional materials included Plaintiff's logos. These facts do not preclude a finding that Jägermeister granted Plaintiff a license. Testimony explained that Plaintiff included logos from both entities to show the public that they were working together.

In support of its position, Jägermeister directs the Court's attention to *Bacardi U.S.A., Inc. v. Major Brands, Inc.* 2014 WL 2200042 (S.D. Fla. Mar. 20, 2014). *Bacardi*, however, is distinguishable from the instant matter. Initially, it should be noted that the *Bacardi* Court concluded that the Missouri Franchise law did not apply. Additionally, the parties in *Bacardi* had written agreements which detailed the use of Bacardi's trademark, for example, Major Brands was required

to obtain specific permission prior to using Bacardi's trademarks.  No such

requirement has been shown in this case.

**Jury Instructions 13 and 14**

Defendants argue they are entitled to a new trial based on two erroneous jury

instructions.  Defendants contend Instructions failed to properly define

"community of interest" and "license."

Instruction 14 defined community of interest as follows:

The phrase "community of interest," as used in Instruction No. 13, means Major Brands' investments in the Mast-Jägermeister brand(s) of spirits were substantially specific to the brand(s), and Major Brands was required to make those investments by the parties' agreement or the nature of the business.

This definition satisfies the Eighth Circuit's directive of *Shelton Bros.*

From *Neptune* and its progeny, the Third Circuit distilled the following two-part test for determining whether a community of interest exists: "(1) the distributor's investments must have been substantially franchise-specific, and (2) the distributor must have been required to make these investments by the parties' agreement or the nature of the business." *Cooper Distrib. Co. v. Amana Refrigeration, Inc.,* 63 F.3d 262, 269 (3d Cir.1995) (internal quotation and citation omitted). Courts interpreting the New Jersey statute have in turn sought guidance from the very similar Wisconsin Fair Dealership Law (WFDL), see *Neptune,* 462 A.2d at 599–600, under which a community of interest may exist under one of two circumstances: (1) "when a large proportion of an alleged dealer's revenues are derived from the dealership," or (2) "when the alleged dealer has made sizable investments (in, for example, fixed assets, inventory, advertising, training) specialized in some way to the grantor's goods or services, and hence not fully recoverable upon termination."[6] *Frieburg Farm Equip., Inc. v. Van Dale, Inc.,* 978 F.2d 395, 399 (7th Cir.1992) (citations omitted); see Wis. Stat. § 135.02 (defining "[c]ommunity of interest" as "a continuing financial interest between the

grantor and grantee in either the operation of the dealership business or the marketing of such goods or services").

*Shelton Bros*., 669 F.3d at 879–80. Adhering to this analysis, Instruction 14 sets out that a community of interest can be found if Plaintiff made substantially franchise specific investments which were required by the parties' agreement or nature of the business, in satisfaction of the *Cooper* and *Frieburg* standards; *Frieburg* does not require *both* franchise specific and a large proportion of franchise-derived revenue.

Defendants also take issue with the definition of license in Instruction 14.

The term "license," as used in Instruction No. 13, means permission to use Mast-Jägermeister' s trade names, trademarks, or related characteristics in such a manner as to create a reasonable belief on the part of alcohol retailers or the consuming public that there was a connection between Mast-Jägermeister and Major Brands by which Mast-Jägermeister vouched for the activity of Major Brands relating to the Mast-Jägermeister brand(s) of spirits.

Defendants claim the inclusion of "alcohol retailers" is contrary to the *Shelton Bros.* finding that no special rules apply to alcohol distributors. The Court agrees with Plaintiff that this inclusion does not add a special rule which applies to alcohol retailers. Although Defendants argue that the inclusion is contrary to *Shelton Bros.*, Defendants fail to articulate how the inclusion of "alcohol retailers or the consuming public" impose any special rule applicable to alcohol distributors, thereby misleading the jury. The mere inclusion of "alcohol retailers" does not in itself grant a license. Rather, the jury was instructed that there must be

a connection between Jägermeister and Plaintiff.  The instruction sets out the

necessary requirements for finding a license.

Defendants also argue the instruction left out necessary law in that it failed

to include language that in order for a license to exist the situation must be one

where the "franchisee wraps himself with the trade name of the franchisor and

relies on the franchisor's goodwill to induce the public to buy." *Shelton Bros*., 669

F.3d at 879.  Defendant fails to point to anything in *Shelton Bros.* requiring

inclusion of the language used by the district court in  *Liberty Sales Assocs., Inc. v.*

*Dow Corning Corp.,* 816 F.Supp. 1004, 1009–10 (D.N.J.1993).

**Substantial Evidence of the Existence of a Business Expectancy**

Defendants next argue that Plaintiff has failed to produce sufficient evidence

it had a reasonable expectation that it would always distribute Jägermeister.

Defendants cite to the fact that the trial evidence showed Plaintiff was not

performing up to Jägermeister's expectations.  The evidence, however, established

that Jägermeister requested Plaintiff to withhold distribution of the product in order

to boost sales in the new year.  From this it is reasonable to find that the parties

worked with each other to distribute the product in different ways to reach a

desired outcome.  Moreover, the parties had been in a relationship for over 40

years, a fact from which the jury could conclude that the relationship would

continue for years into the future.

**Southern Glazers Wine & Spirits and Southern Glazers of Missouri Knowledge of a Protectable Business Relationship**

Initially, the Court agrees with Plaintiff that Southern Glazers Wine & Spirits of Missouri are not entitled to judgment as a matter of law based on its contention that it had no role in any of the events at issue.  The evidence established that Southern Glazers Wine & Spirits of Missouri was a necessary component to operation in Missouri. Likewise, there was evidence that  Southern Glazers Wine & Spirits of Missouri's CEO was involved in the termination of the relationship with Plaintiff.

In support of a claim for tortious interference with a business expectancy, Plaintiff "was required to show '(1) a valid business expectancy; (2) defendant's knowledge of the relationship; (3) a breach induced or caused by defendant's intentional interference; (4) absence of justification; and (5) damages.'" *Rail Switching Servs., Inc. v. Marquis-Mo. Terminal, LLC*, 533 S.W.3d 245, 259 (Mo. Ct. App. 2017) (quoting *Stehno v. Sprint Spectrum, L.P.*, 186 S.W.3d 247, 250 (Mo. 2006) (en banc)). '[I]n all cases where the defendant has a legitimate interest, economic or otherwise, in the ... expectancy sought to be protected, then the [Plaintiff] must show that ... [Defendants] used improper means to interfere.' *Id.* at 258." *Trone Health Servs., Inc. v. Express Scripts Holding Co.*, 974 F.3d 845, 856 (8th Cir. 2020).

Defendants argue there was no valid business expectancy since the relationship between Jägermeister and Plaintiff was merely a distributor arrangement and nothing more. However, as discussed *supra*, the jury's conclusion that a valid franchise existed satisfies the first requirement.

Evidence was presented that Southern Glazers knew of Jägermeister's relationship with Plaintiff.  As Plaintiff argues, in the discussions leading up the business relationship between Jägermeister and Southern Glazers, Defendants recognized Plaintiff's previous distribution of Jägermeister, that Missouri was a franchise state, and that there were discussions of extricating Missouri from the negotiations between Jägermeister and Southern Glazers.  The jury could, from the evidence, conclude that Southern Glazers was aware of the relationship between Plaintiff and Jägermeister.

Evidence was presented to establish that Southern Glazers approached Jägermeister.  It offered incentives to Jägermeister if Jägermeister would give its business to Southern Glazers.  The evidence was that the initial incentive was rejected with no counteroffer; Southern Glazers persisted by raising its offer. Southern Glazers would not consider taking the Missouri business out of the deal. However, it was all or nothing.  Indeed, Southern Glazers ultimately agreed to indemnify Jägermeister.  A reasonable jury could conclude Southern Glazers intentionally interfered with Jägermeister and Plaintiff's relationship.

With respect to the fourth element, evidence was presented that although Southern Glazers was entitled to compete for business, it induced Jägermeister to terminate the franchise with Plaintiff without cause.  Southern Glazers offered substantial amounts of money for Jägermeister's business and agreed to indemnify it, possibly in anticipation of the claims for the termination of the Missouri business relationship with Plaintiff.  "While lawful competition would be a defense, competing by improper means…is not a valid justification." *Lyn–Flex West, Inc. v. Dieckhaus,* 24 S.W.3d 693, 700 (Mo.Ct.App.1999) *(citing Briner Elec. Co. v. Sachs Elec. Co.,* 680 S.W.2d 737, 741 (Mo.Ct.App.1984))." *Synergetics, Inc. v. Hurst*, 477 F.3d 949, 959 (8th Cir. 2007). Plaintiff submitted evidence to support its franchise claim and the actions taken by Southern Glazers to induce the cancellation of the relationship without cause, and hence has submitted sufficient evidence to support the claim of intentional interference with a contract or business relationship. It was within the jury's purview to ascertain the credibility of Jägermeister's evidence that the decision to switch to Southern Glazers was solely that of Jägermeister and was not influenced by Southern Glazers' monetary incentives and indemnification.

The damages element of Plaintiff's tortious interference claim is evident. Plaintiff no longer received any business from Jägermeister.

**Instructions 17 and 18**

Defendants argue they are entitled to a new trial because Instructions 17 and 18 failed to include essential elements. These instructions, however, tracked Missouri Approved Instructions. During the Court's instruction conference, the parties argued their positions and the Court articulated its findings and conclusions with respect to them.

Likewise, Defendants' argument that the instructions gave the jury a "roving commission" is without merit. The Court gave the tortious interference instruction provided in MAI Instruction 23.11[1981 Revision], which instructed the jury on what it should consider. Nothing in this instruction assumes a disputed fact or submits an abstract legal question allowing the jury to roam freely through the evidence.

Defendants focus on the length of the contract between Southern Glazers and Jägermeister, however, they fail to present binding, relevant authority to establish the length of this contract is applicable to the analysis of a tortious interference with the relationship between Plaintiff and Jägermeister.

**Civil Conspiracy**

> "Civil conspiracy is an agreement or understanding between two or more parties to do an unlawful act or use unlawful means to do a lawful act." *Park Ridge Assocs. v. UMB Bank*, 613 S.W.3d 456, 463 (Mo. App. 2020). Civil conspiracy is proven where the plaintiff establishes: "(1) two or more persons (2) an unlawful objective, (3) a meeting of the minds, (4) an act in furtherance of the conspiracy, and (5) damages." *Id.* at 463-64. "Plaintiffs need not plead or prove the conspirators intended to harm them if they can show harm resulted." *Id.* at 464.

*Hahn v. Monsanto Co.,* 39 F.4th 954, 970 (8th Cir. 2022). Probative facts support the jury's conclusion that Jägermeister and Southern Glazers participated in a conspiracy. Resolving conflicts in the evidence in Plaintiff's favor, Defendants agreed to use unlawful means—knowingly terminating a protected franchise relationship with Plaintiffs without cause—to form a distributorship between Jägermeister and Southern Glazers. Both companies took acts in furtherance of this unlawful objective. Southern Glazers offered financial incentives and agreed to indemnify Jägermeister and Jägermeister terminated the franchise with Plaintiff.

Having found Jägermeister and Southern Glazers participated in the acts necessary to form a civil conspiracy, the jury's further finding of damages was supported by evidence from McCullum, Johnson, and Plaintiff's expert, Dr. Cox. The jury was within its purview to find the evidence of damages credible.

Defendants argue the civil conspiracy instructions were erroneous and therefore a new trial is required.  The instructions, however, were consistent with the finding of a franchise between Plaintiff and Jägermeister.  Since the jury's verdict stands with regard to the franchise, the instructions were proper.

**Damages and Request for Remittitur**

Defendants argue they are entitled to judgment as a matter of law because there was not sufficient, nonspeculative evidence of any damages suffered by Plaintiff, despite the testimony offered by Plaintiff's expert Dr. Cox.

A plaintiff may recover for lost profits that it establishes with reasonable—not absolute—certainty. *BMK Corp. v. Clayton Corp.*, 226 S.W.3d 179, 195 (Mo. Ct. App. 2007). The "modern emphasis" on the requirement that damages be shown with certainty is on the "fact of damage" and not on the particularized amount. *Penzel Constr. Co., Inc. v. Jackson R-2 Sch. Dist.*, 544 S.W.3d 214, 236 (Mo. Ct. App. 2017); *Cent. Telecommunications, Inc. v. TCI Cablevision, Inc.*, 800 F.2d 711, 730 (8th Cir. 1986) (citing *J. Truett Payne Co. v. Chrysler Motors Corp.*, 451 U.S. 557, 565–67 (1981)). In other words, "certainty" means that damages have been suffered—not exact proof of the amount of the damages. *Harvey v. Timber Res., Inc.*, 37 S.W.3d 814, 819 (Mo. Ct. App. 2001); *see also Refrigeration Industries, Inc. v. Nemmers*, 880 S.W.2d 912, 920 (Mo. Ct. App. 1994) ("While anticipated profits of a commercial business have historically been regarded as too remote and speculative to warrant recovery, they are recoverable if the plaintiff can prove with reasonable certainty that (1) the defendant's conduct caused some loss of profit; and (2) the extent of the loss."). Once the fact of damages has been established, courts "require a lesser degree of certainty as to the amount of loss, leaving a greater degree of discretion to the jury." *BMK Corp.*, 226 S.W.3d at 196. Plaintiff has put forth evidence from which a reasonable jury could find the existence of lost profits. The Court also finds that Plaintiff has provided a

18

sufficient basis from which a damages calculation can be determined with a degree of reasonable certainty.

One such basis is evidence representing the profits that Plaintiff could have earned but for Defendants' actions, from which a jury could make a reasonably certain calculation as to the number of damages. Plaintiff consistently earned profit from the distribution of Jägermeister, despite the decrease in amount of product sold. It was for the jury to determine whether Plaintiff's arguments regarding causation and the quantity of their losses were sufficient for an award of actual damages. *Vandervort v. Nationstar Mortg., LLC*, 2:14-cv-04014-SRB, 2015 WL 12731917, at *9 (W.D. Mo. Feb. 11, 2015).

Plaintiff's expert's damage model accounted for a discounted rate based on Plaintiff's weighted average cost of capital which described lost profits. Dr. Cox's testimony details the factors considered in arriving at the range of damages incurred as a result of the lost business and presents sufficient evidence for the jury's consideration of lost profits. Thus, the Court finds that the amount of damages flowing from Defendants' cancellation of the relationship with Plaintiff was strictly an issue for the jury to decide.

A district court may remit a jury verdict or grant a new trial based on an excessive verdict "only when [the verdict] is so grossly excessive that there is plain injustice or a monstrous or shocking result." *Eckerberg v. Inter-State Studio &*

*Publ'g Co.*, 860 F.3d 1079, 1088 (8th Cir. 2017) (quoting *Hudson v. United Sys. of Arkansas, Inc.*, 709 F.3d 700, 705 (8th Cir. 2013)).

"Under Missouri law, a verdict is excessive when it exceeds 'fair and reasonable compensation.' *Wright*, 877 F.3d at 374 (citing *Eckerberg*, 860 F.3d at 1088 and Mo. Rev. Stat. § 537.068)." *Steak N Shake, Inc. v. White*, No. 4:18-CV-00072-SRC, 2021 WL 4819592, at *6–7 (E.D. Mo. Oct. 14, 2021).

> "'There is no precise formula for determining whether a verdict is excessive,' but the 'ultimate test is what fairly and reasonably compensates plaintiff for the injuries sustained.' " *Estate of Snyder v. Julian*, 789 F.3d 883, 888 (8th Cir. 2015) (quoting *Graeff v. Baptist Temple of Springfield*, 576 S.W.2d 291, 309 (Mo. 1978)). "A verdict is not excessive unless the result is monstrous or shocking." *Id.*; *Miller v. Huron Regional Med. Ctr.*, 936 F.3d 841, 846 (8th Cir. 2019) ("[R]emittitur is reserved for cases where the verdict is so grossly excessive as to shock the judicial conscience."); *Bennett v. Riceland Foods, Inc.*, 721 F.3d 546, 553 (8th Cir. 2013) ("Remittitur is appropriate where the verdict is so grossly excessive as to shock the judicial conscience.").
>
> "[T]he trial court may not substitute its judgment for that of the jurors. The determination of the amount of damages is peculiarly within the province of the jury. Such determination rests largely in its discretion." *Taylor v. Otter Tail Corp.*, 484 F.3d 1016, 1020 (8th Cir. 2007) (quoting source and internal quotation marks omitted). "A new trial or remittitur is not appropriate merely because we may have arrived at a different amount from the jury's award." *Joseph J. Henderson & Sons, Inc. v. Travelers Property Casualty Ins. Co. of America*, 956 F.3d 992, 1001 (8th Cir. 2020) (quoting source and internal quotation marks omitted); *Bennett*, 721 F.3d at 553 ("We will not order a new trial or remittitur merely because we may have arrived at a different amount from the jury's award."). "Remittitur is not appropriate merely because the district court would have awarded a different amount than the jury.
>
> Rather, the court orders remittitur when it believes the jury's award is unreasonable on the facts." *Miller*, 936 F.3d at 846 (internal citations

omitted). "Only if damages are so excessive as to be without the support of the evidence should the court disturb a jury's verdict of damages." Taylor, 484 F.3d at 1020.

*Id*, No. 4:18-CV-00072-SRC, 2021 WL 4819592, at *6–7.

The jury's verdict cannot be said to be unreasonable on the facts. Plaintiff and Jägermeister's relationship spanned some 40 plus years; the verdict is essentially based on profits which Plaintiff would have realized in, 15 years, not, as Defendants argue, based on a relationship lasting forever. While Defendants argue there could be good cause for termination in the future, there likewise is a reasonable basis for the jury to conclude that but for the termination because of the agreement between Southern Glazers and Jägermeister, Plaintiff and Jägermeister would have continued their relationship well into the future. With the 40-year background relationship, the prospective 15-year damage award is neither excessive nor unreasonable.

**Admission of Evidence**

Defendants argue the Court improperly admitted evidence without proper foundation. As Plaintiff once again submits, the parties entered into a stipulation regarding the admission of disclosed documents.

> Each Party hereby agrees and stipulates that, for purposes of trial in this case, all documents produced by a Party during discovery in this case are authentic and constitute that Party's business records as contemplated in FREs 803, 901, 902 and 903.

The Court's prior ruling that this stipulation eliminates any challenges to the authenticity and therefore admissibility of business records remains for the reasons set forth previously.  Defendants cannot now claim the stipulation does not cover the admission of business records.

**Unjust Enrichment**

Although the jury found Jägermeister was not unjustly enriched, Defendant presents an alternative argument detailing its belief the jury verdict was correct in this conclusion.  Since Jägermeister is not arguing for a different verdict on Plaintiff's unjust enrichment count, the Court declines to engage in any discussion with respect thereto.

**Conclusion**

The jury in this matter heard the evidence, was properly instructed on the applicable law, and arrived at its verdicts.  The record contains sufficient evidence to support the verdicts and assessment of damages.  Defendants' Renewed Motion for Judgment as a Matter of Law or, in the Alternative, a New Trial on all Claim and/or Remittitur will be denied.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Renewed Motion for Judgment as a Matter of Law or, in the Alternative, a New Trial on all Claim

and/or Remittitur (Doc. No. 560) is **denied**.

Dated this 22nd day of August 2022.


_____
HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE